IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:23CR112-1 |
| | : | |
| KARON WILLIAM LYNCH | : | |

## FACTUAL BASIS FOR A GUILTY PLEA

NOW COMES the United States of America, by and through Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, and states that the factual basis for a guilty plea is as follows:

On April 8, 2022, High Point Police Officer Nathan Shoe ("Shoe") was conducting a focused patrol of the area on and around W. English Road because of the high number of drug-related complaints and his concerns of violent activity. As part of this high visibility enforcement, Shoe drove by a house where he knew an occupant had been charged with drug trafficking on multiple occasions.

As he did so, Shoe noticed a car in the driveway preparing to leave the premises – a light blue Chevrolet Equinox with a temporary South Carolina registration plate and window tint so dark that it was impossible to see inside the car. Shoe recognized the individual walking away from the Chevrolet towards the house as the suspected drug-trafficker.

Possibly having witnessed a hand-to-hand drug transaction, Shoe continued down the street and pulled into a parking lot. Very soon afterwards, the Chevrolet passed by Shoe, and he noticed that the window tint "obviously" violated North Carolina and South Carolina tint law limits of 35% and 27%, respectively. Shoe pulled out behind the Chevrolet, confirmed that the window tint clearly violated the laws of both states, and initiated the traffic stop.

As Shoe approached the passenger side of the Chevrolet, still unable to see inside the car, he asked the occupants to roll down the windows but, after the second request, heard the driver (later determined to be the sole occupant, Karon William Lynch) say that the windows could not roll down. Shoe then walked around to the driver's side. Lynch had cracked open the door to explain that the windows were recently tinted so he could not roll them down. At that point, Shoe told Lynch that, indeed, the dark tint was the reason for the stop. Shoe then called for a K-9 Unit to report to the scene. He asked Lynch to exit the car and provide his license, registration, and proof of insurance. Around this time, another High Point Police Officer responded to the scene to assist.

After Shoe frisked Lynch, they walked to Shoe's patrol car. Lynch leaned up against the outside of the car's front passenger door (with the window rolled all the way down) as Shoe sat in the driver's seat to use his laptop to run Lynch's information. Lynch and Shoe continued talking throughout the encounter about the car's registration (North Carolina or South Carolina), insurance, and window tint.[1] Lynch gave conflicting stories about where he was traveling – to pick up his girlfriend (initially) and to go to work (later). Shoe told Lynch that he was going to write him a warning ticket for the tint. Before he did so, though, K-9 Ronnie and Officer Derrick McNeal ("McNeal") arrived on scene and K-9 Ronnie began an exterior sniff of the Chevrolet. Shoe was still entering Lynch's information into the laptop for the warning ticket when K-9 Ronnie alerted at the back end of the Chevrolet.

McNeal began the search of the Chevrolet on the driver's side where he quickly saw a black and silver pistol under the driver's seat. McNeal and Edwards detained Lynch while Shoe asked him if he was a felon (to which he responded he was).

---

[1] During the traffic stop, Shoe showed Lynch the window tint meter and asked Lynch if he could roll down at least one window so Shoe could use it. Because Lynch said he could not roll down any window, Shoe did not read the tint to avoid damaging the Chevrolet's windows.

Shoe and McNeal returned to the Chevrolet to continue their search. In addition to the firearm, they found suspected narcotics and cash in the car. During the vehicle search, Shoe returned to his patrol car and read Lynch his Miranda rights.

Lynch engaged with Shoe on the way to the police station, inquiring about his bond because he was on parole for "a shooting charge," "assault with a deadly weapon serious injury." At the station but before Lynch entered the holding area, he admitted to having more narcotics on his person and pulled out a bag of crack cocaine from his underwear. While officers were processing Lynch, Shoe asked him more questions about the firearm. Lynch explained that he bought the gun from "somebody off the streets" in Greensboro "about two and a half weeks ago" because he had "been shot and everything" and there was "too much going on." He also told Shoe that the gun had been under the driver's seat when Shoe stopped him.

Lynch made two calls while in custody at Guilford County Detention Center. The first was to a woman. He told her he was going to have to do time because he "got the gun charge" and was on parole. The woman conferenced in a man to the call. Lynch told the man that his charge was "firearm by felon," as well as possession of cocaine and heroin. "It wasn't

4

nothing like but a .3, though. Probably like 2-3 grams." The man stated, "You got that firearm right there, boy." Lynch said, "And it's crazy because I normally leave everything when I go to Thomasville." Lynch and his male friend discussed Lynch's previous "firearm by felon" and assault with a deadly weapon convictions. Before the call ended, after Lynch and the man had been discussing possible bond and gun holds, Lynch said that he "was hoping that s*** wasn't stolen."

Lynch's second call was to a man. Lynch explained that as he was about to go (from the traffic stop), the K9 had to have hit on the gun, "the hard," and "the food." "It wasn't over like a .3 of food, though." "Probably like 5 grams, 6, no probably like 7 grams, 8 grams of hard . . . . I had that s*** on me." The man said, "I thought they only got the gun." Lynch said, "Hell no."

Lab technician Maholic processed the firearm for fingerprints but found "no observable ridge detail of value." Maholic also collected swabs of possible touch DNA from the (1) trigger, trigger guard, grip, slide of gun and (2) lip of the gun magazine. Law enforcement did not submit the DNA samples for testing.

The seized drugs weighed 4.43 grams (suspected crack cocaine) and 0.58 grams (suspected fentanyl). However, the North Carolina State Crime

5

Laboratory only conducted a chemical analysis of the suspected crack cocaine from Lynch's person and determined that it was 3.15 (+/- 0.06) grams of cocaine base.

The seized handgun was a black Taurus PT945 .45 caliber with serial number NTA63034 and was loaded with 5 rounds of .45 Speer Hollow Point ammunition. Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Michael Newsome, Interstate Nexus Examiner, determined that the firearm was manufactured outside of North Carolina and, thus, had to have traveled in and/or affected interstate commerce prior to Lynch's possession.

At the time of this offense, Lynch had the following felony convictions with the following related sentences: (1) October 8, 2009 – Robbery with a Dangerous Weapon, 61-83 months; (2) January 20, 2010 – Accessory After the Fact – Manslaughter, 21-26 months; (3) April 18, 2019 – Assault With Deadly Weapon – Serious Injury, 38-58 months; and (4) January 31, 2020 – Breaking and Entering, Maintaining a Dwelling/Vehicle, Possession with Intent to Sell and Deliver Cocaine, Possession with Intent to Sell and Deliver Marihuana,

and Possession of a Firearm by a Felon, consolidated 15-27 months. Lynch has not received any pardons for these convictions.

This 17th day of April, 2023.

                                        Respectfully submitted,

                                        SANDRA J. HAIRSTON
                                        United States Attorney

                                        /S/ LAURA J. DILDINE
                                        Laura J. Dildine
                                        Assistant United States Attorney
                                        NCSB #41205
                                        United States Attorney's Office
                                        101 S. Edgeworth St., 4th Floor
                                        Greensboro, NC   27401
                                        Phone: 336/333-5351

CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record.

/S/ LAURA J. DILDINE
Assistant United States Attorney
NCSB # 41205
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: 336/333-5351